# United States Court of Appeals for the Federal Circuit

---

**HOWMEDICA OSTEONICS CORP., STRYKER IRELAND LTD.,**
*Plaintiffs-Appellants*

**v.**

**ZIMMER, INC., WRIGHT MEDICAL TECHNOLOGY, INC., SMITH & NEPHEW, INC.,**
*Defendants-Appellees*

---

2015-1232, -1234, -1239

---

Appeals from the United States District Court for the District of New Jersey in No. 2:11-cv-06511-SDW-MCA, Judge Susan D. Wigenton.

---

Decided: May 12, 2016

---

GEORGE C. LOMBARDI, Winston & Strawn LLP, Chicago, IL, for plaintiffs-appellants Howmedica Osteonics Corp., Stryker Ireland Ltd. Also represented by KARL LEONARD; MICHELLE C. REPLOGLE, Houston, TX; SCOTT R. SAMAY, New York, NY; JOVIAL WONG, Washington, DC; WILLIAM L. MENTLIK, ROY H. WEPNER, Lerner, David, Littenberg, Krumholz & Mentlik LLP, Westfield, NJ.

J. MICHAEL JAKES, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, for defendant-

appellee Zimmer, Inc. Also represented by AMANDA K. MURPHY. Defendant-Appellee Wright Medical Technology, Inc., represented by ANTHONY J. FITZPATRICK, CHRISTOPHER S. KROON, Duane Morris, LLP, Boston, MA; SAMUEL W. APICELLI, Philadelphia, PA. Defendant-Appellee Smith & Nephew, Inc., represented by BRADLEY T. LENNIE, Hunton & Williams, LLP, Washington, DC; DAVID A. KELLY, Atlanta, GA; ARNOLD B. CALMANN, Saiber, LLC, Newark, NJ.

---

Before O'MALLEY, PLAGER, and WALLACH, *Circuit Judges.*

PLAGER, *Circuit Judge.*

This is a patent case. Plaintiffs-Appellants Howmedica Osteonics Corp. and Stryker Ireland Ltd. (collectively, "Stryker") appeal the district court's final judgment.[1] The district court held that Defendants-Appellees Smith & Nephew, Inc. ("Smith"); Wright Medical Technology, Inc. ("Wright"); and Zimmer, Inc. ("Zimmer") (collectively "Zimmer et al.") did not infringe the asserted claims of U.S. Patent No. 6,475,243 ("'243 patent").[2]

The district court granted summary judgment of non-infringement following claim construction. On appeal, Stryker contends that the district court erred in its claim construction and abused its discretion by forbidding

---

[1] We refer to the final judgment for ease of reference. The district court granted a separate final judgment in favor of each defendant-appellee.

[2] As explained in more detail later, the '243 patent at issue is a reexamination patent; several of the asserted claims were added in reexamination.

Stryker from asserting infringement under the doctrine of equivalents.

BACKGROUND

I. Technology and Prosecution History

The '243 patent concerns a socket assembly used in prosthetic hip implants.  The patent addresses three major components involved: a shell member and a bearing member, which together replace the socket (technically the acetabulum) part of the pelvis bone, and the femoral component, the ball-shaped end of the thigh bone that marries with the socket.  In a prosthetic hip replacement, a shell device is implanted into a patient's pelvic bone; a bearing device is then secured into that shell; and that bearing then receives the ball-shaped end of a patient's femur (which end may be replaced with an artificial ball device).

According to the patent, securing the bearing to the shell is particularly important.  The securement mechanism depends upon the type of bearing chosen by the physician.  In some instances, a bearing may be secured by means of a rib-recess securement.  The bearing's exterior surface, which comes into contact with the shell's interior surface, contains a protruding rib.  That rib fits into a recess within the shell's interior surface. This attachment mechanism works when the bearing is of a flexible type, such as a polyurethane substance.

In other instances, a bearing may be secured by means of complementary tapered surfaces.  A portion of the bearing's exterior surface, which comes into contact with the shell's interior surface, is tapered in a manner complementary to a tapered portion of a shell's interior surface.  This may be used when the bearing is of a ceramic or metal type.

In at least some instances, a fourth component may be involved—a metallic securing device or sleeve, which fits in between the shell and the bearing.

Regardless of whether a sleeve is necessary, the patented shell can accommodate either type of securement since the shell may contain both a recess and a tapered surface. However, the location of the recess relative to the taper within the shell is important. The patent claims specify that the recess and the taper (or the first and second securing "structures" or "elements") are to be "juxtaposed" or in "juxtaposition" with one another and "placed at relative locations such that the effectiveness" of each is "maintained while in the presence of the other."[3] Examples:

> Claim 20: "the first and second securing structures being juxtaposed with one another and placed at relative locations such that the effectiveness of each of the first and second securing elements is maintained while in the presence of the other of the first and second securing elements";

> Claim 27: "the first and second securing elements being juxtaposed with one another and placed at relative locations such that the effectiveness of each of the first and second securing elements is maintained while in the presence of the other of the first and second securing elements";

> Claim 41: "the securement recess and the internal securement taper being juxtaposed with one another and placed at relative locations such that the effectiveness of each of the securement recess

---

[3] For ease of reference, we refer to the recess and taper—not the "structures" or "elements"—unless otherwise noted.

and the internal securement taper is maintained while in the presence of the other of the securement recess and the internal securement taper"; and

Claim 53: "the securement recess and the internal securement taper are in juxtaposition with one another and placed at relative locations such that the effectiveness of each of the securement recess and the internal securement taper is maintained while in the presence of the other of the securement recess and the internal securement taper."

'243 Ex Parte Reexamination Certificate at 1:47–55 (claim 20), 3:11–17 (claim 41), 5:48–6:5 (claim 53); '243 patent at 17:3–8 (claim 27).

In two separate passages, the written description explains that the recess is to be placed "essentially midway" along the taper. First, in discussing shell member 22, the patent states:

Seating surface 110 includes an upper end 112 and a lower end 114 and is divided by the recess 62 into an upper segment 116 and a lower segment 118 (see FIG. 4). By placing the recess 62 *essentially midway* between the upper end 112 and the lower end 114, engagement of the seating surfaces 106 and 110, and the locking of the seating surfaces 106 and 110 in response to such engagement, is facilitated by virtue of the locking being accomplished along segments 116 and 118 having generally the same, and therefore maximized, axial length. In this manner, the effectiveness of the seating surface 110 in assuring appropriate alignment between the sleeve 100 and the shell member 22 as the sleeve 100 is inserted into the shell member 22 and in subsequently attaining the desired locking engagement with seat-

ing surface 106 is not compromised by the presence of the recess 62.

'243 patent at 7:8–23 (emphasis added).

The patent explains that seating surface 110, located in the shell's interior surface, is provided with a tapered configuration for mating with another tapered surface. *Id.* at 6:20–7:5. These components are pictured:



FIG.4

Second, in discussing shell member 212, the patent states:

Seating surface 354 includes an upper end 360 and a lower end 362 and is divided by the recess 262 into an upper segment 364 and a lower segment 366. By placing the recess 262 *essentially midway* between the upper end 360 and the lower end 362, engagement of the seating surfaces 350 and 354, and the locking of the seating surfaces 350 and 354 in response to such engagement is facilitated, by virtue of the locking being accomplished along segments 364 and 366 having generally the same, and therefore maximized, axial length. In this manner, the effectiveness of the seating surface 354 in assuring appropriate

alignment between the sleeve 340 and the shell 212 as the sleeve 340 is inserted into the shell 212 and in subsequently attaining the desired locking engagement with seating surface 350 is not compromised by the presence of the recess 262.

*Id.* at 11:28–42 (emphasis added).

The patent explains that seating surface 354, located in the shell's interior surface, is provided with a tapered configuration for mating with another tapered surface. *Id.* at 11:12–25.

These components are pictured:

 

FIG.23                    FIG.24

The '243 patent issued as a continuation-in-part of U.S. Patent Application Ser. No. 09/083,406. The patent was later amended during ex parte reexamination. When compared with its parent, the '243 patent, as amended after reexamination, contained at least four important changes. First, Stryker added all of the relative location claim language quoted above. Second, the two passages from the written description reproduced above were added. Third, Stryker amended Figure 4 to include labels identifying the relative location of the recess and taper and added Figures 23 and 24. The original (on the left)

and subsequent (on the right) versions of Figure 4 are reproduced below:



FIG.4                              FIG.4

Fourth, Stryker added dependent claims 25 and 32 which explicitly state that the recess is located "essentially midway between the upper and lower ends of the internal securing surface." '243 Ex Parte Reexamination Certificate at 2:7–9 (claim 25); '243 patent at 18:4–6 (claim 32).

## II. Procedural History

On November 4, 2011, Stryker sued Zimmer et al. in the United States District Court for the District of New Jersey for infringing the '243 patent. On May 17, 2012, Stryker served its initial infringement contentions asserting literal infringement of several claims—without asserting infringement under the doctrine of equivalents ("DOE"). However, Stryker also stated:

> To the extent that any of the limitations of the asserted claims are not deemed to be literally infringed in the manner set forth in Exhibit A, Stryker contends that they are infringed under the doctrine of equivalents. In the event that a claim limitation is deemed to be missing under a literal infringement analysis (e.g., due to claim construction), Stryker reserves the right to demonstrate the presence of a substantial equiva-

lent of such an element and pursue infringement claims under the doctrine of equivalents.

J.A. 5409–10, 5463, 5758–59.

On July 9, 2013, the district court issued its *Markman* opinion and order. The court construed the relative location claim language quoted above in claims 20, 27, 41, and 53, to require that "the recess is essentially midway along the taper such that the effectiveness of each is not compromised." J.A. 39. The court also construed claim language in the same claims to require that "the internal taper of the shell mates with the external taper of a metallic securing member (*i.e.* sleeve) secured to and separate from the bearing member." J.A. 46. In other words, the court required the presence of a sleeve in between the shell and the bearing, for the taper type of securement.

As a result of the "sleeve" construction, Stryker could no longer prove infringement by Wright or Zimmer—neither of their products contained a sleeve. Appellants' Br. at 17. As a result of the "essentially midway" construction, Stryker could no longer prove literal infringement by any of the Appellees. *Id.* at 18–19.

Even after the adverse claim constructions, Stryker did not move to amend its infringement contentions to include the DOE.

Stryker offered Wright and Zimmer a stipulated judgment of non-infringement under the "sleeve" construction. Stryker offered Smith a stipulated judgment of non-infringement under the "essentially midway" construction. No consent judgment was reached because Wright and Zimmer sought a judgment that they did not infringe under the "essentially midway" construction.

Despite the lack of agreement, Stryker moved for entry of final judgment or entry of partial final judgment under Fed. R. Civ. P. 54(b)—based on the "sleeve" con-

struction as to Zimmer and Wright and the "essentially midway" construction as to Smith. In its briefing, Stryker stated it had infringement arguments against Wright and Zimmer regarding the "essentially midway" construction under the DOE. The district court denied Stryker's motion and ordered summary judgment briefing. Zimmer et al. moved for summary judgment. The parties agreed that only claims 20, 27, 41, and 53 were relevant for summary judgment.

On November 24, 2014, the court issued an opinion and order granting Zimmer et al.'s motions for summary judgment of non-infringement. The court determined that Stryker's failure to amend its infringement contentions to include a DOE infringement theory precluded Stryker from asserting that theory in opposition to Zimmer et al.'s motions for summary judgment. The court noted that Stryker could not assert infringement under the DOE generally and also stated Stryker was specifically precluded from asserting the DOE theory of infringement with respect to the "essentially midway" construction. Stryker did not argue for literal infringement under the court's "essentially midway" construction. As a result, the court granted Zimmer et al.'s motions for summary judgment based on the "essentially midway" construction. The court also granted Zimmer's and Wright's motions for summary judgment of non-infringement based on the court's "sleeve" construction. The court expressed no opinion as to whether Smith would be entitled to summary judgment on the basis of the "sleeve" construction.

The court entered final judgments based upon its granting Appellees' motions for summary judgment.

Stryker appealed to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).[4]

DISCUSSION

Resolution of this appeal turns on two issues: did the district court err in its claim constructions, and did the district court err in precluding Stryker from pursuing a DOE theory of infringement.

We review a district court's grant of summary judgment according to the law of the regional circuit. *Teva Pharm. Indus. Ltd. v. AstraZeneca Pharm. LP*, 661 F.3d 1378, 1381 (Fed. Cir. 2011). The Third Circuit reviews grants of summary judgment without deference, applying the same standard used by the district court. *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

We review claim construction without deference to the trial court's view of the matter, but we review underlying factual findings by the district court for clear error. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841–42 (2015).

We review a district court's application of its local rules for abuse of discretion. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366–67 (Fed. Cir. 2006).

---

[4] This appeal is a consolidation of appeal nos. 2015-1232, 2015-1234, and 2015-1239.

## I. Claim Construction

First, we examine the district court's claim construction. Stryker contests both the "essentially midway" and "sleeve" constructions. However, we need only address the "essentially midway" construction because it is dispositive.

Generally, a claim term is given its ordinary and customary meaning—the meaning that a "term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). However, a skilled artisan reads a claim term not only in the context of the claim at issue, but also in the context of the entire patent, including the written description and prosecution history, as well as relevant extrinsic evidence. *Id.* at 1313–17. Indeed, "the [written description] 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* at 1315 (citation omitted). Nevertheless, we have observed that there is a fine line between reading a claim *in light of* the written description and reading a limitation into the claim from the written description. *Id.* at 1323.

As discussed in the background section above, each claim at issue specifies that the recess and taper of the shell be "juxtaposed" or in "juxtaposition" with one another and "placed at relative locations such that the effectiveness" of each is "maintained while in the presence of the other." The claims themselves do not describe how to achieve this outcome.

As noted earlier, the written description contains two passages—set out above—describing how to place the recess and taper relative to one another to maintain effective alignment and securement. Both passages were

added in conjunction with the claim language at issue.[5] Both passages place the recess "essentially midway" along the taper, dividing the taper into two roughly equal segments whose lengths are thereby maximized. '243 patent at 7:8–23, 11:28–42. The written description explains that, as a result, the effectiveness of the taper is not compromised by the presence of the recess. *Id.* These explanations are the only instances in which the patent specifies how to achieve the goals of relative recess and taper placement and what effectiveness of the taper means in the context of the claims. Indeed, the written description offers no other suggestion as to how the recess and taper should be located to satisfy the claim language. Thus, every description and every figure in the patent that discusses the issue places the recess "essentially midway" along the taper.

Stryker asks that we focus on the plain language of the claims and offers a number of dictionary definitions for the terms "juxtaposed with" and "in juxtaposition with" to mean that the recess and taper are "positioned nearby" one another. But focusing on a particular term's plain and ordinary meaning may be inadequate, when relying on that meaning does not resolve the parties' dispute. *See O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). That is the case here. By focusing on the specific juxtaposition terms, Stryker ignores the other claim language at issue (e.g., effectiveness) and fails to resolve the parties' dispute as to how the recess and taper are to be located relative to

---

[5]    More accurately, the written description passages were added in conjunction with only some of the claims at issue—claims 20 and 27. Claims 41 and 53 were added during reexamination. Claim 20 was amended during reexamination.

each other to satisfy the entirety of the claim language at issue.

This problem is only resolved by examining the written description—i.e., reading the claims in context. Construing the claims in this manner is not only consistent with our precedent, but also necessary in light of the claim language at issue. We have previously construed such relative location terms in a similar manner by relying upon the written description. *See, e.g.*, *Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329 (Fed. Cir. 2011). Here, we must understand how the recess and taper are to be "juxtaposed" or in "juxtaposition" with one another, and "placed at relative locations such that the effectiveness" of each is "maintained while in the presence of the other." The meaning of these terms is not facially clear, and a skilled artisan would naturally look to the written description for a full understanding of the claims. We do the same and adopt the district court's construction.

We noted earlier the fine line between reading claims *in light of* the written description, and importing limitations from the written description. We also note that not all commentators are in agreement that we religiously adhere to the distinction. *See, e.g.*, Robert L. Harmon et al., Patents and the Federal Circuit 453–56 (12th ed. 2015). The statute requires that claims "particularly point[] out and distinctly claim[] the subject matter" of the invention. 35 U.S.C. § 112(b); *see also Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). When the claims leave little doubt as to what is intended, re-shaping the claims with material from the written description is clearly unwarranted.

On the other hand, the parties have not raised the question of whether the juxtaposition language could make the claims fatally indefinite. Under the circumstances, construing the unclear claim terms at issue in

light of the written description explanation is the proper claim construction technique.

Stryker argues that the district court's construction is improper for at least two additional reasons, neither of which is persuasive.

## A. Preferred Embodiments

Stryker contends that the "essentially midway" language in the written description concerns a preferred embodiment or preferred embodiments and that we cannot so limit the claims. Stryker labels this as the "cardinal sin" of claim construction, based upon *Phillips*, 415 F.3d at 1320, and *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1348 (Fed. Cir. 2008).

First, Stryker focuses on the sentences preceding each of the two written description passages set out above: "In the preferred embodiment, the shell member 22 and the sleeve 100 are constructed of commercially pure titanium and the angle A is about 6º." '243 patent at 7:5–8. "In the preferred embodiment, the shell member 212 and the sleeve 340 are constructed of commercially pure titanium and the angle 356 is about 60." *Id.* at 11:25–27.[6] Stryker notes that each sentence starts with the phrase "In the preferred embodiment." Stryker reasons that introductory clauses apply not only to the sentences in which they are located, but also to the entirety of the quoted passages.

Stryker is mistaken. Both sentences discuss preferred embodiments only with respect to the angle of the taper—not the relative locations of the recess and the taper. In other words, context reveals that such introduc-

---

[6]    It appears that the language may have been mistakenly drafted as "angle 356 is about 60" instead of "angle 356 is about 6º."

tory clauses limit only the sentences in which they are located in this case.

Second, Stryker argues that the "essentially midway" language in the written description concerns a preferred embodiment because of language near the beginning and end of the written description. Before the figures are described, the patent states: "The invention will be understood more fully . . . in the following detailed description of preferred embodiments of the invention." *Id.* at 3:42–45. Similarly, before reciting the claims: "It is to be understood that the above detailed description of preferred embodiments of the invention is provided by way of example only." *Id.* at 12:54–56.

However, if the general rule against limiting claims in this manner held, then Stryker's proposed understanding would quite severely limit any understanding of the claims in light of the written description. Indeed, there would be some question as to whether there was the statutorily required written description—"[t]he specification shall contain a written description of the invention . . . in . . . full, clear, concise, and exact terms." 35 U.S.C. § 112(a).

We decline to read this written description in such a crabbed manner as Stryker suggests. Reading the patent in its entirety, it is clear that such generalized language concerning preferred embodiments, near the start and end of the written description, does not limit the entirety of the intervening section—3:42 to 12:54. In this case, such language merely reflects that this wide swath of the written description may contain descriptions of preferred embodiments, and this is true.

Finally, Stryker argues that, even if we were to rely on the written description, it merely teaches that the length of the taper zone should be maximized—and that this can be accomplished by placing the groove midway along the taper, at an edge of the taper, or not in the

taper.   However, this misconstrues the language of the written description, which clearly discusses maximizing each of the two separate segments of the taper created by placing the groove in the middle of the taper and thereby bisecting the taper.  *See* '243 patent at 7:8–23, 11:28–42.

### B. Claim Differentiation

Stryker also argues that the district court's construction violates the doctrine of claim differentiation, since dependent claims are presumed to be of narrower scope than the independent claims from which they depend. Stryker cites claims 25 and 32, which include the additional, explicit requirement that the "recess is located essentially midway" between the taper.  Claim 25 ultimately depends from independent claim 20.   Claim 32 ultimately depends from independent claim 27.

However, claim differentiation is a rebuttable presumption that may be overcome by a contrary construction dictated by the written description or prosecution history.  *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011).   In this instance, that presumption has been rebutted.  The written description reveals only instances in which the claim language is satisfied by the placement of the recess "essentially midway" along the taper.   The prosecution history reveals that the same language from the written description was added in conjunction with the similar claim language at issue—as well as the "essentially midway" language in dependent claims 25 and 32.  The natural and correct result of reviewing the intrinsic evidence was the district court's construction.   Claim differentiation is not conclusive; it is a guide, not a rigid rule.  *See ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009).  Although it is a useful tool, claim differentiation does not require that the "dependent claim tail . . . wag the independent claim dog" in

this case.  *See N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1577 (Fed. Cir. 1993).

For the foregoing reasons, we affirm the district court's "essentially midway" construction.

## II. Local Patent Rules

Second, we examine whether the district court abused its discretion in applying its local rules to preclude Stryker from arguing infringement under the DOE.  We affirm decisions in which the district court enforced its own local rules, unless it is "clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by any evidence." *Monolithic*, 467 F.3d at 1366–67; *see also Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1321 (Fed. Cir. 2016) (same).  In light of this highly deferential review standard, we are not able to conclude that the district court abused its discretion.

The district court determined that Stryker could not assert any DOE theory of infringement because Stryker failed to comply with the court's Local Patent Rules ("LPR").  LPR 3.1(e) requires that a patentee's infringement contentions state "whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality," unless a design patent is at issue.  The district court noted that Stryker failed to set forth specifically any DOE theory in its original infringement contentions nor did it allege DOE in later amended contentions.  Indeed, Stryker never sought to amend its infringement contentions to include the DOE.  And the court also determined that Stryker's reserving its right to assert the DOE did not satisfy LPR 3.1(e).

We defer to the district court "when interpreting and enforcing local rules so as not to frustrate local attempts to manage patent cases according to prescribed guide-

lines." *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002). The local rules clearly required Stryker, as the party asserting infringement, to state whether it asserted infringement under the DOE in its infringement contentions. The local rules also clearly envisioned that Stryker could seek to amend its infringement contentions. LPR 3.7 allows for amendment by court order upon a timely application and showing of good cause. LPR 3.7(a) specifically notes that "a claim construction by the [c]ourt different from that proposed by the party seeking amendment" may, absent undue prejudice to the adverse party, support a finding of good cause.

Stryker never sought to amend its infringement contentions to include the DOE, so it cannot demonstrate that it satisfied the LPR requirements. Although the result may seem harsh, we find no abuse of discretion in the district court applying its rather clearly stated rule. Indeed, we have failed to find an abuse of discretion in similar circumstances. In *Genentech*, 289 F.3d at 773–74, we affirmed the district court's ruling that Genentech failed to comply with a local rule requiring that a DOE theory be included in its claim chart. As a result, Genentech was barred from proceeding with a DOE theory of infringement. *Id.*

Stryker's arguments on this point are not persuasive. Stryker first attempts to shift the focus from the LPR by arguing that the district court abused its discretion in permitting Zimmer et al. to move for summary judgment. Stryker reasons that the district court should have granted it final judgment on the same terms as its proposed consent judgment—although not all Appellees agreed to those terms. We observe that this argument ignores the district court's actual decision and does not address Stryker's failure to abide by the local rules. Moreover, Stryker did not appeal the denial of its motion for entry of final judgment.

Stryker next argues that it had no need to allege a DOE theory of infringement until after claim construction. This may have been true, but it still does not excuse Stryker's failure to follow the local rules. Even if Stryker had no reason to amend until after claim construction, Stryker could have sought amendment after the *Markman* order. Stryker asserts that a litigant cannot be forced to foresee and incorporate all possible claim constructions into its initial infringement contentions. This may be true, but the local rules provide for opportunity to seek amendment of its contentions for this very reason. *See* LPR 3.7(a) (discussing claim construction).

Stryker focuses on language in *Monolithic*, 467 F.3d at 1366, that "[i]f a local patent rule required the final identification of infringement and invalidity contentions to occur at the outset of the case, shortly after the pleadings were filed and well before the end of discovery, it might well conflict with the spirit, if not the letter, of the notice pleading and broad discovery regime created by the Federal Rules." Of course, we agree, but we highlight the very next sentence from the same opinion: "But we see nothing in the Federal Rules that is inconsistent with local rules requiring the early disclosure of infringement and invalidity contentions and *requiring amendments to contentions to be filed with diligence.*" *Id.* (emphasis added).

With respect to amendment, Stryker argues there was no opportunity or reason to amend after the *Markman* order, because discovery had been stayed. Zimmer et al. note a number of discrepancies with this argument, which Stryker does not contest. Zimmer et al. note that Stryker engaged in discovery *after* the *Markman* order by requesting samples of the accused products—and that Zimmer et al. provided such samples. Zimmer et al. note that the district court then entered an order ending discovery two months after the *Markman* order, because Stryker con-

ceded at a status conference that it could not prove infringement.

Moreover, when seeking entry of a final judgment, Stryker contended it had a DOE argument, but Stryker refused to disclose the basis for that argument. Stryker does not appear to contest any of these points. Even if Stryker did contest these points, the record reflects that Stryker had time to seek amendment of its infringement contentions but failed to do so. In light of the record we cannot conclude that the district court abused its discretion in applying its local rules to prevent Stryker from asserting the DOE when it did.

## III. Summary Judgment

The district court granted Zimmer et al.'s motions for summary judgment on the basis of the "essentially midway" construction. The court reasoned that, in light of the accused devices, Stryker could not prevail on a literal infringement theory, and could not argue for DOE infringement given its failure to comply with the local rules. Stryker has not identified any genuine dispute as to any material fact or any indication why Zimmer et al. would not be entitled to judgment as a matter of law based on our affirming the "essentially midway" construction and affirming the district court's application of its local rules to bar Stryker's DOE argument. We affirm on this ground, but we express no opinion as to the district court's grant of summary judgment in favor of Wright and Zimmer on the basis of the "sleeve" construction. On the basis of our disposition, we need not and do not reach that issue.

As a result of the consolidation of the three cases here on appeal, identifying the exact "asserted claims" in this case is not a straightforward exercise. For the record, here is our understanding. Although neither the parties nor the district court identified for the record on appeal all of the actual "asserted claims," the parties and the

district court appear to have agreed that claims 20, 27, 41, and 53 were dispositive for the purposes of summary judgment.

In their briefing of summary judgment before the district court, the Appellees identified the asserted claims in each of their cases. Zimmer stated that Stryker asserted Zimmer infringed claims 20, 27–30, 35–37, 39, 41–48, and 53–55. Motion for Summary Judgment by Zimmer, Inc. at 2, *Howmedica v. DePuy*, No. 11-6498 (D.N.J. June 6, 2014), ECF No. 225-2. All of these claims are either the independent claims at issue on appeal (claims 20, 27, 41, and 53) or are dependent claims ultimately depending from those independent claims. Each of those independent claims contains language affected by the "essentially midway" construction. Stryker could not prevail on a literal infringement theory under the district court's construction.

Wright stated that Stryker asserted Wright infringed claims 20, 27–30, 36, 37, 39, 41–44, 47, 48, and 53. Motion for Summary Judgment of Noninfringement by Wright Med. Tech., Inc. at 2, *Howmedica v. DePuy*, No. 11-6498 (D.N.J. June 6, 2014), ECF No. 224-2. All of these claims are either the independent claims at issue on appeal (claims 20, 27, 41, and 53) or are dependent claims ultimately depending from those independent claims. Each of those independent claims contains language affected by the "essentially midway" construction. Stryker could not prevail on a literal infringement theory under the district court's construction.

Smith stated that Stryker asserted Smith infringed claims 20, 27–30, 35–37, 39, and 41–55. Motion for Summary Judgment of Non-Infringement by Smith & Nephew Inc. at 1, *Howmedica v. DePuy*, No. 11-6498 (D.N.J. June 6, 2014), ECF No. 220-2. All of these claims—except for claims 49–51—are either the independent claims at issue on appeal (claims 20, 27, 41, and

53) or are dependent claims ultimately depending from those independent claims.  Claims 49–51 each include the identical relative location terms found in claim 20—which is at issue on appeal.  It is unclear why the district court or the parties did not construe the identical claim language in claims 49–51.  However, the parties and the district court appear to be in agreement that the construction of these terms in the claims at issue on appeal—claims 20, 27, 41, and 53—is dispositive.  With this understanding, we affirm.

## CONCLUSION

We have considered the parties' other arguments but found them unpersuasive.  For the foregoing reasons, the final judgments of the district court are affirmed.

## AFFIRMED